## Case No. 17,898.
### WINTERPORT GRANITE & BRICK CO. v.
The JASPER.

[Holmes. 99.] [1]

Circuit Court, D. Massachusetts.  Feb., 1872.

CONTRACT OF SALE — OFFER AND ACCEPTANCE —
CARGO OF VESSEL—SALE AT INTER-
MEDIATE PORT.

1. The agent of the owners of a cargo of wood, described in the bill of lading as consisting of ninety-five cords, more or less, while the vessel was lying in a port to which she had been taken in an unseaworthy condition, offered by letter to sell the wood to the master of the vessel, at a certain price "per cord, for the quantity shipped." The master seasonably mailed to the agent an acceptance of the offer, and on the next day wrote that he would have the wood surveyed, and would remit as soon as he could make it convenient. On receipt of these communications, the agent replied, claiming that the term "quantity shipped" in his offer meant the quantity "as per bill of lading," and requiring the master at once to remit the

---

[1] [Reported by Lewis H. Bond, Esq., and here reprinted by permission.]

[1] [Reported by Jabez S. Holmes, Esq., and here reprinted by permission.]

proceeds, with the bill of lading to verify the account, and notifying him that the wood was not his "property to move away or dispose of until he complied with these conditions." Before this reply was received the master sold the wood, which on survey proved to contain seventy-eight cords and one foot. *Held*, that the sale was complete, and the title to the wood vested in the master, when his acceptance of the offer to sell was mailed.

2. A voyage from Maine to Boston was abandoned on account of unseaworthiness of the vessel, caused by perils of the seas, and the vessel taken to an intermediate port, where the agent of the owners of the cargo sold the cargo to the master. *Held*, that the owners of the cargo had no lien upon the vessel for non-delivery of the cargo at the port of destination.

[Appeal from the district court of the United States for the district of Massachusetts.

[This was a libel by the Winterport Granite & Brick Company against the schooner Jasper (F. W. Nickerson and others, claimants). From a decree of the district court dismissing the libel (case unreported), libelants appealed.]

George W. Esterbrook, for appellants.

D. A. Gleason and C. W. Phillips, for claimants.

SHEPLEY, Circuit Judge. Libellant shipped, in November, 1867, a quantity of pinewood on the schooner Jasper, then lying in the port of Winterport, Me., to be transported to Boston and delivered to Phinley W. Reed, the agent of the libellants. The master of the schooner gave libellants a bill of lading for ninety-five cords, more or less, with the usual exception of the perils of the seas. The vessel sailed on her voyage, and proceeded down the Penobscot river as far as Bucksport Narrows, when a heavy squall from the north-west drove the vessel ashore, where she lay two tides, causing her to leak badly. After getting her off, the master proceeded with her down the river to the port of Stockton, where the master came to anchor, and called a survey, which pronounced the vessel unseaworthy.

The crew then left the vessel on account of her unseaworthy condition. The master remained on board, and with some assistance took the vessel to Rockland, where the wood was landed and subsequently sold. In October, 1868, this libel was filed, alleging the shipment of ninety-five cords of wood, according to the bill of lading; that the master converted to his own use seventy-eight cords thereof, and carelessly and negligently lost the balance; and praying for process against the schooner, her tackle, apparel, and furniture.

The answer admits the shipment of the cargo, but denies that the amount shipped exceeded seventy-eight cords and one foot; alleges that the schooner sailed from Winterport with that quantity on board; that without fault of the master or crew she was driven ashore, and became unseaworthy and unable to complete the voyage; that she was got off in a reasonable time thereafter, and as soon as it could be done, and proceeded to the port of Stockton, where the master immediately notified the agent of the libellants of the facts;

and that thereupon the libellants, through their agent, bargained and sold all the wood to Josiah G. Staples, the master of said schooner. The answer alleges that the voyage was terminated at Stockton by the perils of the seas, without default for which the schooner would be liable; and that the liability of the schooner then ceased, any further detention of said wood having been solely in pursuance of the contract of sale between the libellants and Staples.

At the time of the shipment of the cargo, Olesser Gray and William R. Ginn were part-owners in the Jasper. In January, 1868, they sold their interest to Henry S. Staples, who owned the remaining shares in the schooner. In June, 1868, Staples sold the schooner to George W. Reed and William B. Reed, of Bangor, Me. From the time of the disaster to the time of filing the libel the schooner was either in the district of Maine or the district of Massachusetts, or on voyages between ports in said districts, being frequently in the ports of both districts. Libellants are a corporation established by the laws of Massachusetts, and having also a place of business and agents at or near Winterport, in Maine.

On the 22d of November, the master advised the agent of the libellants that the vessel had been ashore, and was not seaworthy to perform the voyage; that he would be obliged to discharge the cargo, and pile the wood on the wharf; that the vessel would require to have the sheathing taken off, and to be recaulked and sheathed, which, on account of the ice, could not be done until spring. He then inquires of the agent, "What is the least you will take for the wood here?" On the 25th of November, Reed acknowledges the receipt of the master's letter of the 22d, and writes: "Should you prefer to buy rather than ship the wood, you can have it for four dollars per cord, for the quantity shipped." On the 29th of November, the master writes to Reed, acknowledging the receipt of Reed's letter of the 25th, and accepting his offer of the wood.

On the 30th of November, Staples again writes to Reed: "I have concluded to take up with your offer. I think of going to Rockland, and do the best thing I can with the wood, and I will remit the money as soon as I can make it convenient. I will get a sworn surveyor on the wood, and good measure as I can."

On the 3d of December, Reed writes to Staples acknowledging the receipt of Staples's letter of the 30th, but claiming that Reed's offer to sell for "four dollars per cord for the quantity shipped" "means per bill of lading." and requiring the master at once to remit the proceeds, with bill of lading to verify the account, and notifying Staples that the wood was "not his property to move away or dispose of until he complied with these conditions." Before this letter was received, Staples had sold the wood for four dollars and thirty-seven cents per cord in Rockland, accounting to the owners for the advance of thirty-seven cents

per cord, as freight from Winterport to Rockland.

The offer to sell the wood to Staples, and his acceptance, were both unconditional. When a proposition is made in writing, and sent by post, the person making the offer can retract or modify by a subsequent letter reaching the other party at any time before an answer of acceptance is written and put in the mail. But as soon as such answer is placed in the mail, the contract is closed as to both parties. Although a letter of retraction be actually on the way at the time when the letter of assent is mailed, yet the contract is closed, unless such letter of retraction be received prior to the mailing of the letter of assent. The acceptance by written communication takes effect from the time when the letter of acceptance is sent, and not from the time when it is received by the other party. Adams v. Lindsell, 1 Barn. & Ald. 681; Dunlop v. Higgins, 1 H. L. Cas. 381; Tayloe v. Merchants' Fire Ins. Co., 9 How. [50 U. S.] 390; The Palo Alto [Case No. 10,700]; Mactier v. Frith, 6 Wend. 103.

The property was in the possession of Staples, and no formal delivery was necessary to change the title. His letter of acceptance reached Reed before Reed's letter of Dec. 3 was written. And even if the modification of the contract by the letter of Dec. 3 took effect, and the wood was not to become the property of Staples "to move away and dispose of until he had complied with the conditions" of that letter, it is clear that, after that time, he would hold the cargo, not as agent of the owners of the schooner, but subject to the arrangement between Staples and the owners of the cargo. The owners of the schooner, after that time, were under no obligation to forward, in fact they had no right to forward, the cargo to Boston, the place of its original destination. If the libellants had any lien on the cargo until the price was paid, they clearly had no lien against the vessel, having waived any right to have the cargo delivered in Boston, and consented to accept it at an intermediate port.

And if any claim existed against the vessel, libellants should have enforced it within a reasonable time. What is a reasonable time is a question dependent upon the circumstances of each case; and the court, in the exercise of its discretion in determining this question, will be guided by the evidence of opportunities to enforce the lien, of the lapse of time, of the change, if any, of ownership. In this case, ten months had elapsed; the vessel had been in Massachusetts four times, and she was in Boston eighteen days before being libelled, consigned to the same person who, as agent of the libellants, had been the consignee of the cargo in controversy, and had been publicly advertised and sold before the service of the libel. If the libellants had any lien, they would have lost it by their neglect to enforce it under such circumstances. Decree affirmed, with costs.